IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| JAMES L. HEREFORD, ) <br> ) <br>    Plaintiff, ) <br> ) <br>    vs. ) <br> ) <br> KASIM REED, ) <br> In his official capacity as Mayor of the ) <br> CITY OF ATLANTA; ) <br> ) <br> and ) <br> ) <br> GRADY GOGGINS, Jr., ) <br> In his individual capacity; ) <br> ) <br>    Defendants. ) | CIVIL ACTION <br> FILE NO. _____ <br><br> JURY TRIAL REQUESTED |

## **COMPLAINT**

COMES NOW Plaintiff James L. Hereford who brings this Complaint seeking damages and declaratory relief against Defendants Grady Goggins, Jr. and the City of Atlanta pursuant to 42 U.S.C § 1983, arising from the unreasonable search and seizure of Plaintiff Hereford by Defendant Goggins on August 5, 2010, without reasonable articulable suspicion or probable cause and

in violation of the Fourth and Fourteenth Amendments to the United States Constitution.

## JURISDICTION

1.

This action arises under the authority vested in this Court by virtue of 42 U.S.C. § 1983, 28 U.S.C. § 1331, and 28 U.S.C. § 1343.  This Court is authorized to grant declaratory relief pursuant to 28 U.S.C.A. § 2201 and 28 U.S.C. § 2202.

## VENUE

2.

Venue is proper in this Court pursuant to 28 U.S.C.A. § 1391.  The City of Atlanta, Georgia, ("Atlanta") is within this judicial district; Defendant Goggins resides within this judicial district; and a substantial part of the events or omissions giving rise to the claim occurred within this judicial district.

## PARTIES

3.

Plaintiff James L. Hereford ("Hereford") is a resident of Georgia.

4.

Defendant Grady Goggins, Jr. ("Goggins") is a resident of Georgia and an Atlanta police officer. He is sued in his individual capacity. At all times pertinent to the claims herein Defendant Goggins acted under color of state law.

5.

Kasim Reed is sued in his official capacity as mayor of the City of Atlanta ("Defendant City of Atlanta"), a City chartered under the laws of the State of Georgia and subject to the jurisdiction and venue of this Court. The Atlanta Police Department (APD) is a division of Defendant City Atlanta.

FACTUAL ALLEGATIONS

**The Seizure and Search of Plaintiff Hereford**

6.

On August 5, 2010, Plaintiff Hereford walked from his workplace at the 180 Peachtree building to Underground Atlanta to have lunch.

7.

Upon leaving the food court through the exit near the parking deck, Hereford had two ways to walk back to work: down the steps to the right and

through the Underground Atlanta complex, or across the bridge to the left, down one level, and then directly onto the street.

8.

To avoid walking through Underground Atlanta itself (which can seem like a maze to those not familiar with its layout), Hereford decided to exit the complex through the parking deck and directly onto a public street.

9.

Hereford was talking with a friend on his mobile phone as he entered the parking deck elevator.  Distracted by his phone conversation, instead of pressing the button to descend to the street Hereford mistakenly pressed the button marked "7."

10.

When Hereford exited the elevator at the 7th floor he realized his mistake and crossed the 7th floor elevator lobby and entered the stairway to walk down to the ground level.

11.

Within moments after Hereford entered the stairway Defendant Goggins opened the door to the stairway and assaulted Hereford with a raised fist. (Grady Goggins, Jr. sworn statement dated 9/9/10, Page 5-1-3.)

12.

Defendant Goggins immediately began to "conduct an interview" with Plaintiff Hereford.  (Grady Goggins, Jr. sworn statement dated 9/9/10, Page 5-1-3.)

13.

According to Defendant Goggins:   "I then placed him [Hereford] into custody at which time I conducted a terry frisk (sic) checking for any weapon that may cause danger to myself or the public before transporting [Hereford] to the precinct." (Grady Goggins, Jr. sworn statement dated 9/9/10, Page 5-3-3.)

14.

Defendant Goggins searched Hereford's pockets, removing and examining various items including a folded pay-sub and two debit cards.

15.

Defendant Goggins seized Hereford's mobile phone and searched content on the phone, including the call log and text messages.

16.

According to Defendant Goggins: "Pending further investigation, I detained Mr. Hereford and escorted him to the 94 Pryor St. Underground Police Station." (Grady Goggins, Jr. sworn statement dated 9/9/10, Page 5-2-3.)

17.

Defendant Goggins questioned Hereford at the Underground Atlanta police station for approximately 2-1/2 hours after which Hereford was released.

18.

Hereford was never charged with any crime.

## CLAIMS FOR RELIEF

Plaintiff repeats and realleges the allegations in the foregoing paragraphs as if fully set forth herein.

**Unlawful Detention**

19.

Defendant Goggins seized Plaintiff Hereford, under the Fourth Amendment, when he assaulted Hereford with a raised first and began to question him, as no reasonable person would have believed that he was free to walk away from a police officer who commenced an encounter with a show of force and immediately "started to conduct an interview."

20.

At the time he seized Plaintiff Hereford Defendant Goggins had no reasonable, articulable, or objective basis to suspect that Hereford had committed, was committing, or was about to commit any criminal offense.

21.

According to his own sworn statement, the only thing Goggins knew about Hereford when he approached him with a raised first was that Hereford was "an unknown black male standing in the stairway." (Grady Goggins, Jr. sworn statement dated 9/9/10, Page 5-1-3.)

22.

At no time did Defendant Goggins ever observe Plaintiff Hereford do anything that suggested any criminal activity.

23.

The detention of Plaintiff Hereford in the absence of reasonable articulable suspicion was an unreasonable seizure under the Fourth and Fourteenth Amendments to the United States Constitution.

24.

Defendant Goggins violated clearly established law; no reasonable officer could have believed that it was lawful to detain Plaintiff without reasonable articulable suspicion that Plaintiff was involved in criminal activity.

**Unlawful Frisk**

25.

Defendant Goggins had no reasonable belief that Plaintiff Hereford was armed and dangerous.

26.

To the contrary, according to his own sworn statement, Defendant Goggins had determined that Plaintiff Hereford posed "no immediate threat." (Grady Goggins, Jr. sworn statement dated 9/9/10, Page 5-1-3.)

27.

Despite the lack of any reasonable belief that Plaintiff Hereford was armed and dangerous Defendant Goggins "conducted a terry frisk" of Plaintiff Hereford.

28.

The frisk of Plaintiff Hereford was unreasonable under the Fourth and Fourteenth Amendments to the United States Constitution.

29.

Defendant Goggins violated clearly established law; no reasonable officer could have believed that it was lawful to frisk Plaintiff for weapons without reasonable suspicion that Plaintiff was armed and dangerous.

**Unlawful Search**

30.

The warrantless search of Plaintiff Hereford's pockets, pay-stub, debit cards, the contents of his mobile phone, and other items was unreasonable under the Fourth and Fourteenth Amendments to the United States Constitution.

31.

Defendant Goggins violated clearly established law; no reasonable officer could have believed that it was lawful to search Plaintiff without probable cause.

## Unlawful Arrest

32.

The detention of Plaintiff Hereford was excessive and unreasonable in duration and scope.

33.

Defendant Goggins's action in taking Plaintiff Hereford into custody and transporting him to a police station for questioning constituted an arrest for which probable cause was required.

34.

Defendant Goggins had no probable cause to believe that Plaintiff Hereford had committed or was committing any criminal offense.

35.

The arrest of Plaintiff Hereford was an unreasonable seizure under the Fourth and Fourteenth Amendments to the United States Constitution.

36.

Defendant Goggins violated clearly established law; no reasonable officer could have believed that it was lawful to arrest Plaintiff without probable cause that he had committed a crime.

37.

In all the foregoing, Defendant Goggins acted with reckless, deliberate and callous indifference to the constitutionally protected rights of the Plaintiff.

**Liability of the City of Atlanta**

38.

At the time of Defendant Goggins's encounter with Plaintiff Hereford Defendant City of Atlanta was aware of frequent and widespread violations of the Fourth Amendment by Atlanta police officers.  Among many others instances to be proven at trial after discovery, these violations included:

a) The unlawful search of 1056 Dill Avenue by Sergeant Wilbert Stallings and other APD officers in October, 2005 (for which Sgt. Stallings was sentenced to 18 months in federal prison);

b) The unlawful arrest of Deborah Schowalter in January, 2006 (for which the City of Atlanta eventually paid a settlement of $25,000.00);

c) Various Fourth Amendment violations associated with the death of Kathryn Johnston in November, 2006 (for which the City of Atlanta eventually paid a settlement of $4,900,000.00);

d) The unlawful stop and arrest of Kelvin Bryant on October 16, 2008, by Atlanta police officers Brandon Jackson, James Menzoian, William Porter, and Jason Overbaugh, about which a federal judge found "that the officers did not have probable cause or even reasonable suspicion to stop [Bryant's] vehicle." (See United States v, Kelvin Bryant, 1:09-CR-018-JEC, U.S.D.C.-N.D.Ga);

e) The unlawful arrest of Minnie Carrie in March, 2009 (for which the City of Atlanta eventually paid a settlement of $20,000);

f) The unlawful search, seizure, and arrest of dozens of innocent bar patrons during the the Atlanta Eagle bar raid (the "Atlanta Eagle Raid") in September, 2009 (for which the City of Atlanta eventually paid a settlement of $1,025,000.00).

39.

Despite knowledge of pervasive Fourth Amendment violations, the City of Atlanta acted with deliberate indifference to the rights of persons, such as Plaintiff, with whom the police would come into contact by failing to provide appropriate training, guidance, and discipline to Atlanta police officers.

**Failure to Train**

40.

The Atlanta Police Department has demonstrated a pervasive failure to train officers regarding the requirements of the Fourth Amendment.

41.

Numerous Fourth Amendment violations by Atlanta police officers have demonstrated the compelling need for effective training regarding constitutional law which the Atlanta Police Department has failed or refused to provide.

42.

On July 14, 2009, the Atlanta Citizen Review Board ("ACRB") recommended that the Atlanta Police Department conduct training regarding Fourth Amendment issues including "Terry stops." The Chief of Police rejected this recommendation.

43.

In connection with its investigation of the Atlanta Eagle Raid the ACRB reviewed "records concerning the department's in-service training for officers during 2008 and 2009. There was no indication officers received training concerning constitutional law."

44.

The ACRB "Study of Supervisory Responsibility" regarding the Atlanta Eagle Raid also reported that: "It became evident during the course of the investigation that many officers are unfamiliar with the constitutional requirements for conducting a search and/or seizure."

45.

Deposition testimony and public statements related to the Atlanta Eagle Raid by senior APD commanders including former Chief Richard Pennington, Deputy Chief Carlos Banda, and Major Debra Williams also suggest a pervasive lack of training regarding basic Fourth Amendment concepts such as the

requirements of a lawful Terry stop; the requirements of a lawful frisk; and the definition of an arrest, among other subjects.  These statements suggest both the failure of the Atlanta Police Department to train these employees themselves, as well as the improper training provided by senior commanders to the subordinates who look to them for guidance.

46.

Another example, among many, reflecting the Atlanta Police Department's lack of training regarding Fourth Amendment requirements is the police raid of Ruby's Sanabella Restaurant and Lounge on May 3, 2010, which closely mirrored the unlawful conduct demonstrated during the Atlanta Eagle Raid.  Officers of the Atlanta Police Department, including a supervisor, entered the establishment allegedly suspecting that the restaurant's management might be serving alcohol a few minutes after closing hour; while inside the establishment the officers detained, searched, and conducted ID and warrant checks on all persons inside the building, including those about whom officers had no reasonable articulable suspicion of criminal activity.  According to the police incident report:  "All patrons of the location were detained… All detained patrons were checked through ACIC, and no active warrants were found or confirmed by the patrons." (See, APD Incident Report 10-123-0230-00.)

47.

The Atlanta Police Department's pervasive and pre-existing lack of training regarding fundamental Fourth Amendment concepts is also suggested by the inaccurate legal conclusions contained in the Atlanta Police Department's Internal Affairs report regarding the Hereford complaint itself, which was approved by senior officers including Sgt. R.M. Quintana-Green, Major E.B. Dancy, and Deputy Chief E.N. Finley.

**Failure to discipline**

48.

The Atlanta Police Department has demonstrated a pervasive failure to discipline police officers for unlawful conduct.

49.

As an example, although the Atlanta Citizen Review Board ("ACRB") has sustained complaints against dozens of police officers for unlawful conduct the Atlanta Police Department has never once followed the ACRB's recommendation to impose discipline.

50.

As just one specific example among many, the ACRB recommended that discipline be imposed against the officer who unlawfully arrested Minnie Carrie but the Chief of Police rejected that recommendation.

51.

At the time Defendant Goggins encountered Plaintiff Hereford in the stairway on August 5, 2010, the Defendant City of Atlanta had not disciplined any of the police officers from the Atlanta Eagle Raid who searched and seized dozens of individuals about whom officers had no reasonable suspicion of involvement with criminal activity.

52.

Defendant City of Atlanta has still not disciplined a single officer for his or her conduct during the Atlanta Eagle Raid in September, 2009.

53.

Defending the conduct of the Atlanta Eagle Raid officers rather than imposing discipline demonstrated to Defendant Goggins and other members of the Atlanta Police Department the City of Atlanta's deliberate indifference to the violation of Fourth Amendment protections.

**Unconstitutional Policies, Customs, and Practices**

54.

The search and seizure of Plaintiff Hereford was committed pursuant to unconstitutional policies, customs, and practices of the Atlanta Police Department to seize, frisk, and search individuals without reasonable articulable suspicion or probable cause.

55.

Official policies of the Atlanta Police Department which authorize suspcionless seizures, frisks, and searches include Standard Operating Procedure 3065 (which authorizes and instructs officers to detain and frisk individuals without regard to reasonable articulable suspicion) and Standard Operating Procedure 3020 (which authorizes officers to perform warrantless searches without probable cause).

56.

The custom and practice of the Atlanta Police Department to perform suspicionless seizures, frisks, and searches is reflected by public statements of senior commanders of the Atlanta Police Department as described in ¶ 45 above.

57.

The custom and practice of the Atlanta Police Department to perform suspicionless seizures, frisks, and searches is also reflected by the frequent, known, and openly tolerated instances of such seizures and searches, including those described in ¶ 38 above and others which will be proven at trial after discovery.

**PRAYER FOR RELIEF**

On the basis of the foregoing, Plaintiff respectfully prays that this Court:

1) Assume jurisdiction over this action;

2) Award Plaintiff actual damages, including physical pain and injury, mental anguish, and emotional distress;

3) Award Plaintiff general damages in an amount to be determined by the jury;

4) Award Plaintiff nominal damages for violations of Plaintiff's constitutional rights;

5) Award Plaintiff punitive damages against Defendant Goggins to the extent permitted by law;

6) Declare that Defendants violated Plaintiff's rights under the United States Constitution;

7) Award attorney's fees under 42 U.S.C. § 1988 and any other applicable provision of law;

8) Award such other and further relief as the Court deems just and proper.

A JURY TRIAL IS REQUESTED

Respectfully submitted this 11th day of May, 2011.

/s/ Daniel J. Grossman
Daniel J. Grossman
Georgia Bar No. 313815
Law Office of Daniel J. Grossman
1579 Monroe Drive, Ste F-138
Atlanta, GA 30324
Dan@DanGrossmanLaw.com
(404) 654-0326

Attorney for Plaintiff